UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORRECTION OFFICER MARITZA PARRILLA,

Plaintiff,

-against-

CITY OF NEW YORK; MARTIN F. HORN, individually and in his official capacity as Commissioner of the New York City Department of Correction; Warden KATHLEEN MULVEY; Deputy Warden ANDREW PERIERO; Assistant Deputy Warden JACQUELINE BRANTLEY; and Captains EVELYN GONZALEZ and VALERIE FEREBEE,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-184
New York, N.Y.  10007-2601

*Of Counsel:*    Larry R. Martinez
*Telephone:*     (212) 227-3153

Matter No. 2009-038208

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT

      POINT I

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT ON PLAINTIFF'S GENDER
            DISCRIMINATION CLAIM. .................................................................. 2

            A.   The McDonnell-Douglas Standard. .................................................... 2

            B.   No *Prima Facie* Case - No Minimum
                Qualification ......................................................................... 4

            C.   No *Prima Facie* Case - No Adverse
                Employment Action ............................................................. 5

            D.   No *Prima Facie* Case: No Inference of
                Discrimination. .................................................................... 7

            E.   No Pretext .......................................................................... 10

      POINT II

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT ON PLAINTIFF'S RETALIATION
            CLAIMS. ............................................................................... 11

            A.   Standard. .......................................................................... 11

            B.   No *Prima Facie* Case. ...................................................... 12

               (1)   No Materially Adverse Action ............................... 13

            C.   No Causation: Legitimate Non-Retaliatory
                Reasons. ........................................................................... 16

               (1)   Post Location. ....................................................... 16
               (2)   Tour Change, Overtime Claims and
                     Shift Reductions .................................................. 17
                (3)   Plaintiff's Firearm Request ................................... 19

POINT III

       PLAINTIFF'S § 1983 CLAIMS MUST BE
       DISMISSED. ........................................................................................... 22

       A.   Plaintiff's 1983 Claims Must Be Dismissed for
            Failure to Establish Monell. .............................................................. 22

       B.   No Individual Liability – Qualified Immunity. ................................. 23

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

Barbrocky v. Jewel Food Co.,
    773 F.2d 857 (7th Cir. 1985) ................................................................22

Barney v. Consol. Edison Co.,
    2010 U.S. App. LEXIS 18946 (2d Cir. Sept. 9, 2010) ...........................................21

Bernheim v. Litt,
    79 F.3d 318 (2d Cir. 1996)................................................................7

Brightman v. Prison Health Servs., Inc.,
    62 A.D.3d 472 (1st Dep't 2009) ..........................................................13

Burlington Northern & Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006)................................................................13, 15

Bush v. Fordham Univ.,
    452 F. Supp. 2d 394 (S.D.N.Y. 2006)......................................................5

Celestine v. Petroleos de Venezuela,
    266 F. 3d 343 (5th Cir. 2001) ............................................................22

Chudnovsky v. Prudential Sec., Inc.,
    2000 U.S. Dist. LEXIS 15401 (S.D.N.Y. Oct. 19, 2000),
    aff'd, 2002 U.S. App. LEXIS 24035 (2d Cir. Nov. 20, 2002)...................................3

City of Oklahoma v. Tuttle,
    471 U.S. 808 (1985)................................................................22

Demoret v. Zegarelli,
    451 F.3d 140 (2d Cir. 2006)............................................................24

Eder v. City of New York,
    No. 06 Civ. 13013 (RWS), 2009
    U.S. Dist. LEXIS 11501 (S.D.N.Y. Feb. 12, 2009)..........................................9

Forrest v. Jewish Guild for the Blind,
    3 N.Y.3d 295 (2004) ................................................................13

Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,
    136 F.3d 276 (2d Cir. 1998)............................................................12

**Cases**                                                                                          **Page**

Gilles v. Repicky,
  511 F.3d 239 (2d Cir. 2007)....................................................................................24

Harhay v. Town of Ellington Bd. of Educ.,
  323 F.3d 206 (2d Cir. 2003).............................................................................23, 24

Harlow v. Fitzgerald,
  457 U.S. 800 (1982)...........................................................................................23

Hill v. Rayboy-Brauestein,
  467 F. Supp. 2d 336 (S.D.N.Y. 2006)................................................................15

Hollander v. Am. Cyanimid Co.,
  895 F.2d 80 (2d Cir. 1990)............................................................................16, 18

James v. New York Racing Ass'n,
  233 F.3d 149 (2d Cir. 2000)...........................................................................3, 10

Jute v. Hamilton Sundstrand Corp.,
  420 F.3d 166 (2d Cir. 2005)...............................................................................11

Levitant v. N.Y. Human Res. Admin.,
  625 F. Supp. 2d 85 (E.D.N.Y. 2008) ...................................................................8

Lipton v. Nature Co.,
  71 F.3d 464 (2d Cir. 1995)...................................................................................8

Lowery v. Circuit City Stores, Inc.,
  158 F.3d 742 (4th Cir. 1998)
  Vac. on other grounds, 577 U.S. 1031, 119 S. Ct. 2388 (1999) .............................22

Lundy v. Town of Brighton,
  2010 U.S. Dist. LEXIS 84670 (W.D.N.Y. Aug. 18, 2010) ...................................14

Malley v. Briggs,
  475 U.S. 335 (1986)...........................................................................................23

McDonnell Douglas Corp. v. Green,
  411 U.S. 792 (1973).......................................................................................2, 22

Milani v. IBM Corp. Inc.,
  322 F. Supp. 2d 434 (S.D.N.Y. 2004).................................................................22

**Cases**                                                                                          **Page**


Monell v. Dep't of Soc. Servs.,
    436 U.S. 658 (1978)............................................................................................................22, 23

Nugent v. St. Luke's/Roosevelt Hosp. Ctr.,
    No. 05 CV 5109, 2007 U.S. Dist. LEXIS 28274 (S.D.N.Y. April 18, 2007).........................15

Okayama v. Kintetsu World Express,
    No. 111494/05, 2008 N.Y. Misc. LEXIS 7401 (Sup. Ct. N.Y. Co. June 12, 2008)...............13

Pearson v. Callahan,
    129 S. Ct. 808 (2009)........................................................................................................23, 24

Salaman v. Our Lady of Victory Hosp.,
    514 F.3d 217 (2d Cir. 2008)......................................................................................................2

Santiago v. City of New York,
    No. 05 Civ. 3668, 2009 U.S. Dist. LEXIS 30371 (E.D.N.Y. Mar. 31, 2009) ................6, 7, 16

Saucier v. Katz,
    533 U.S. 194, (2001)...............................................................................................................24

Scott v. Cellco Pshp.,
    No. 98  CV 7245, 2007 U.S. Dist. LEXIS 29063 (S.D.N.Y. April 3, 2007)...........................15

Shumway v. UPS,
    118 F.3d 60 (2d Cir. 1997)........................................................................................................7

Slattery v Swiss Reinsurance Am. Corp.,
    248 F.3d 87 (2d Cir. 2001)......................................................................................................19

Sumner v. U.S. Postal Serv.,
    899 F.2d 203 (2d Cir. 1990)....................................................................................................12

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003)....................................................................................................16

Thornley v. Penton Publishing, Inc.
    104 F.3d 26 (2d Cir. Jan. 7, 1997) .........................................................................................10

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995)....................................................................................................23

**Cases**                                                                                   **Page**

Torres-Sylvan v. Am. Civil Liberties Union,
    2005 U.S. Dist. LEXIS 14868 (S.D.N.Y. July 25, 2005)
    Abrogated on other grounds ........................................................................3

United States v. City of New York,
    631 F. Supp. 2d 419 (S.D.N.Y. 2009)..................................................22

Van Zandt v. KLM,
    80 F.3d 708 (2d Cir. 1996).................................................................12

Williams v. R.H. Donnelley Corp.,
    368 F.3d 123 (2d Cir. 2004)................................................................3

**Statutes**

42 U.S.C. § 1983.............................................................................1, 2, 22, 23

N.Y.C. Admin. Code § 8-107(7)(v) ...............................................................13

Title VII of the Civil Rights Act of 1964 ...................1, 2, 12, 13, 15, 22, 23

N.Y.S.H.R.L..............................................................................1, 2, 12, 13

N.Y.S.H.R.L..............................................................................1, 2, 12, 13

42 U.S.C. § 1981..............................................................................22

## PRELIMINARY STATEMENT

Plaintiff, a retired officer at the Department of Correction's ("DOC") Bronx Detention Complex ("BXDC"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), the New York State Human Rights Law ("SHRL") and the New York City Human Rights Law ("CHRL"), alleging that she was discriminated against and subjected to a hostile work environment on the basis of her gender. Plaintiff also alleges that the defendants retaliated against her for complaining about the alleged discrimination. The Court dismissed plaintiff's hostile work environment claim at a conference held on August 26, 2010. See Pre-Motion Conference Tr., Ex. L at 18.

Plaintiff claims that Warden Kathleen Mulvey (female), Deputy Warden ("DW") Andrew Pereiro (male) and Assistant Deputy Warden ("ADW") Jacqueline Brantley (female) discriminated against her by refusing to assign her to two posts and awarding the posts to males with less experience and seniority. Plaintiff also alleges that defendants retaliated against her after she filed complaints challenging various actions taken by the BXDC administration.

Defendants now move for summary judgment on the following grounds. First, plaintiff's gender discrimination claim must be dismissed because she cannot establish the last three elements of her *prima facie* case. Specifically, plaintiff cannot show that: (a) she possessed the minimum qualifications for the posts; (b) that the denial of the posts resulted in an adverse employment action; and (c) that plaintiff's gender played any role in Warden Mulvey's decision.

Second, plaintiff's retaliation claims must be dismissed because: (a) many of the alleged "retaliatory acts" simply do not amount to "adverse employment actions"; (b) plaintiff cannot establish a causal connection between these actions and any of her complaints; and (c) assuming that plaintiff could establish a causal connection, she cannot adduce any evidence that establishes that defendants' reasons for taking these actions are false.

The record shows that many of the actions taken by the administration were motivated by the opening of a new DOC facility, namely, the Bronx Hall of Justice ("BHOJ"). From January 2008 to December 2009, the DOC was in the process of opening transitioning into the BHOJ. This resulted in a massive transition of posts and court parts from the old BXDC Criminal Court building, where plaintiff had been stationed, to the new building. Many of the actions that plaintiff objects to were motivated by this transition and not by her gender or retaliatory animus. Accordingly, summary judgment should be granted to defendants on all of plaintiff's claims.

## STATEMENT OF FACTS

The Court is respectfully referred to the defendants' Statement of Undisputed Material Facts, dated October 12, 2010 ("56.1 Statement"), the Declaration of Assistant Corporation Counsel Larry R. Martinez, dated, October 12, 2010 ("Martinez Decl."), and the supporting exhibits cited therein for a statement of material facts.

## ARGUMENT

### POINT I

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S GENDER DISCRIMINATION CLAIM.

**A.    The McDonnell-Douglas Standard.**

Plaintiff's discrimination claim is subject to the McDonnell Douglas burden-shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-4 (1973). [1] Under that analysis, the plaintiff carries the initial burden of establishing a *prima facie* case of

---

[1] Plaintiff's § 1983, NYCHRL and NYSHRL disparate treatment claims proceed under the same analytical framework applicable to Title VII claims. See Salaman v. Our Lady of Victory Hosp., 514 F.3d 217, 229 n.9 (2d Cir. 2008).

discrimination. <u>Torres-Sylvan v. Am. Civil Liberties Union</u>, 2005 U.S. Dist. LEXIS 14868 *21 (S.D.N.Y. July 25, 2005). Once plaintiff establishes a *prima facie* case, the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. <u>Id.</u>, 2005 U.S. Dist. LEXIS 14868 at * 21.

If the defendants articulate a legitimate reason for the adverse action, the burden shifts back to the plaintiff to show that defendants' stated reason was merely a pretext for discrimination. <u>Id.</u>, at *22. To show pretext, plaintiff must demonstrate that: (1) the proffered reasons are false; and (2) the real reason was unlawful discrimination. <u>See</u> <u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 154 (2d Cir. 2000). The plaintiff "bears the ultimate burden of persuading the trier of fact that her employer intentionally discriminated against her." <u>James</u>, 233 F.3d at 154.

To establish a *prima facie* case of gender discrimination based on a failure to obtain a particular job assignment, plaintiff must show: (1) she was in a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action by being denied the position at issue; and (4) she was denied the position under circumstances giving rise to an inference of discrimination. <u>See</u> <u>Chudnovsky v. Prudential Sec., Inc.</u>, 2000 U.S. Dist. LEXIS 15401, at *19-20 (S.D.N.Y. Oct. 19, 2000), <u>aff'd</u>, 2002 U.S. App. LEXIS 24035 (2d Cir. Nov. 20, 2002). Summary judgment is appropriate where plaintiff fails to establish <u>any</u> element of her *prima facie* case. <u>Williams v. R.H. Donnelley Corp.</u>, 368 F.3d 123, 126-7 (2d Cir. 2004). [2]

In this case, plaintiff's gender discrimination claim fails because she cannot establish the last three elements of his *prima facie* case. Assuming <u>arguendo</u> that she can establish a *prima facie* case, plaintiff's claim must nevertheless be dismissed because plaintiff

---

[2] To avoid repetition, this memorandum is arranged by element regardless of whether the element is part of the *prima facie* case or the legitimate nondiscriminatory reason, or both.

cannot show that defendants' legitimate non-discriminatory reasons for not awarding her the posts at issue in this case are a pretext for gender discrimination.

**B.     No *Prima Facie* Case - No Minimum Qualification**

Plaintiff cannot establish a *prima facie* case of gender discrimination because she cannot show that she possessed the minimum qualification for the posts in question.  In or about April 2008, plaintiff applied for two posts, namely, post 737-A - Sanitation/Storehouse" ("Sanit/Storehouse"), and post T-527 - Key Control ("Key Control").  See DOC Steady Assignment Roster for Sanit/Storehouse Post, dated May 22, 2008, Ex. I at Bates Stamp MP01292; DOC Steady Assignment Roster for Key Control Post, dated May 22, 2008, Ex. I at Bates Stamp MP01317.

The vacancy listings for the Key Control and Sanit/Storehouse posts indicated that fitness to carry a firearm was a minimum qualification for each post.  See Sanit/Storehouse Posting, Ex. I at Bates Stamp MP01307; Key Control Posting, Ex. I at Bates Stamp MP01328.

Fitness to carry a firearm was a minimum requirement because the posts required the assigned officer to travel outside of the BXDC facility.  See Mulvey Dep. II, Ex. C at 5-9; see also Pereiro Dep., Ex. C, at 36-37; Brantley Dep. II, Ex. E at 80-82; Moran Dep., Ex. G at 63-64. Specifically, the officers assigned to the Key Control and Sanit/Storehouse posts were required to make frequent trips to Rikers Island and other DOC facilities.  See Mulvey Dep. II, Ex. C at 5-9.  DOC policy requires that officers assigned to "outside" posts must be qualified to carry a firearm. See Pereiro Dep., Ex. C, at 36-37.

In this case, Warden Mulvey did not consider plaintiff for the post because, at the time plaintiff applied, she was psychologically unfit ("psych unfit") to carry a firearm.  See Mulvey Dep. II, Ex. C at 5-9; see also Brantley Dep. II, Ex. E at 14-17; Memorandum from Warden Mulvey to Plaintiff, dated June 2, 2008, Ex. I at Bates Stamp MP00033.  Specifically,

from 1997 through August 20, 2008, the DOC's Health Management Division ("HMD") deemed plaintiff psych unfit to carry or possess a firearm.  See Pl. Dep., Ex. A, at 59.  Plaintiff was deemed psych unfit for eleven (11) years as a result of: (a) suffering from depression; (b) being diagnosed with bi-polar disorder; and (c) attempting to commit suicide while employed by the DOC.  See id. at 55; see also Theo Dep., Ex. H at 7; 14-15.

The consequence of a psych unfit designation is that a member of service will be prevented from personally owning a handgun as well as being permanently placed in a post that requires the officer to carry a firearm.  See Mulvey Dep. II, Ex. C at 5-9; see also Pereiro Dep., Ex. C, at 36-37; Brantley Dep. II, Ex. E at 80-82; Moran Dep., Ex. G at 63-64.

In this case, plaintiff readily concedes the fact that, at the time that she applied for the posts, she was not qualified to carry a firearm.  See Pl. Dep., Ex. A at 59.  Indeed, plaintiff withdrew her EEO complaint expressly acknowledging this fact.  See Voluntary Withdrawal of Informal EEO Complaints Case # 20080049, Ex. J at MP01335.  Furthermore, the evidence in this case shows that the officers that were ultimately awarded the posts, Manuel Rivera and Osvaldo Bentancourt, were qualified to carry a firearm.  See DOC Steady Assignment Roster for Sanit/Storehouse Post, Ex. I at Bates Stamp MP01292; see also DOC Steady Assignment Roster for Key Control Post, Ex. I at Bates Stamp MP01317.  Accordingly, no triable issue exists concerning the second element of plaintiff's *prima facie* case.  As such, defendants are entitled to summary judgment and plaintiff's complaint about the denial of her application for two posts must be dismissed.  See Bush v. Fordham Univ., 452 F.Supp.2d 394, 409 (S.D.N.Y. 2006) (dismissing plaintiff's claim because she failed to satisfy employer's criteria for the position).

C.     **No *Prima Facie* Case - No Adverse Employment Action**

Assuming, arguendo, that plaintiff could establish that she possessed the minimum qualifications for the posts, her claim must nevertheless be dismissed because she

cannot establish the third element of her *prima facie* case.  Specifically, plaintiff cannot establish that she suffered an adverse employment action by being denied the posts.

An adverse employment action is a "materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities."  See Santiago v. City of New York, No. 05 Civ. 3668, 2009 U.S. Dist. LEXIS 30371 at *30-31 (E.D.N.Y. Mar. 31, 2009) (citation omitted).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices . . . unique to a particular situation."  Id.

In Santiago, a case with facts strikingly similar to those presented in this action, plaintiff brought suit against the DOC alleging, *inter-alia*, that she was denied various posts on the basis of her race and gender.  See Santiago, 2009 U.S. Dist. LEXIS 30371 at *6.  Much like the plaintiff in this case, the plaintiff in Santiago alleged that she had more seniority and was more qualified than the officers ultimately assigned to the posts.  Id. at *10  The court in Santiago dismissed plaintiff's claims finding that she failed to state a *prima facie* case of gender and race discrimination.  Id. at *29 -*32.  Specifically, the court found that plaintiff failed to establish that she suffered an adverse employment action because none of the posts that plaintiff sought would have resulted in an increase in wage, salary, or benefits.  Id. The court found that plaintiff's contention that the posts offered "more interesting work" was insufficient to establish that the denial of those posts rose to the level of an adverse employment action.  Id.

Like the plaintiff in Santiago, plaintiff here has failed to establish that she suffered an adverse employment action through the denial of the posts.  Here, plaintiff readily concedes that none of the post assignments would have resulted in an increase in salary or benefits.  See

Pl. Dep., Ex. A at 66-67. She testified that the posts were preferred assignments because they involved limited inmate contact. Id. At best, the posts provided nothing more than the kind of preferred work that the Court in Santiago found was insufficient to establish an adverse action. Id.; see also Bernheim v. Litt, 79 F. 3d 318, 327 (2d Cir. 1996)(A materially adverse change must "affect employment in a way that is both detrimental and substantial."). Accordingly, no triable issue exists regarding the third element of plaintiff's *prima-facie* case and her complaint about the denial of her post applications must be dismissed in its entirety.

**D.**     **No *Prima Facie* Case: No Inference of Discrimination.**

Plaintiff cannot establish an inference of gender discrimination because she cannot establish that plaintiff's gender played any role in Warden Mulvey's decision.

First, plaintiff stakes her claim on the allegation that Warden Mulvey awarded the posts to two men "who ha[d] less seniority and were otherwise less qualified than the Plaintiff." See Comp., Docket Entry 1 ¶ 38. However, plaintiff cannot establish an inference of discrimination based on this fact because the officers awarded the posts were not similarly situated to the plaintiff. Stated differently, for plaintiff's claim to be probative on the issue of discriminatory intent, plaintiff must come forward with evidence that establishes that male correction officers that were psychologically unfit were awarded posts that required firearms qualification. See, Shumway v. UPS, 118 F.3d 60, 64 (2d Cir. 1997)(in establishing a *prima facie* case "it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."). Here, the officers awarded the posts were qualified to carry a firearm and, therefore, not similarly situated to the plaintiff. See DOC Steady Assignment Roster for Sanit/Storehouse Post, dated May 22, 2008, Ex. I at Bates Stamp MP01292; see also DOC Steady Assignment Roster for Key Control Post, dated May 22, 2008, Ex. I at Bates Stamp MP01317. Accordingly, plaintiff's attempt to somehow tie the awarding of the posts to her

gender must be rejected. <u>Levitant v. N.Y. Human Res. Admin.</u>, 625 F. Supp. 2d 85, at *13 (E.D.N.Y. 2008) (applicant for promotion with pending disciplinary charges was not similarly-situated to one without such charges).

Second, equally unavailing is plaintiff's allegation that she was entitled to the posts on the basis of her seniority alone. Plaintiff's claim ignores fact that, pursuant to DOC policy, <u>four</u> factors must be taken into consideration when assessing each applicant for a post, namely: (a) seniority; (b) work performance; (c) attendance record; and (d) the applicant's familiarity and qualifications for the post. <u>See</u> Brantley Dep. II, Ex. E at 14-17; <u>see</u> <u>also</u> DOC Operations Order 14/91, Ex. L at MP01289-MP01290.

While it is undisputed that plaintiff had more seniority than the male officers that were assigned the posts, plaintiff has failed to adduce any evidence that establishes that she possessed the minimum qualifications or experience for the posts. As discussed in Point I (B), above, plaintiff was not qualified to carry a firearm and, therefore, ineligible for the posts. Nor has plaintiff produced any evidence that supports her claim that she had any experience relevant to the posts at issue. On the contrary, the record establishes that the officers assigned to the posts were uniquely qualified as both were familiar with the posts' duties and were instrumental in preparing the command for the opening of the BHOJ in January 2008. <u>See</u> Moran Dep., Ex. G at 24, 27; Mulvey Dep. II, Ex. C at 10-11; Brantley Dep. II, Ex. E at 77-78; Memorandum from Brantley to Migdalia Ortega, dated June 13, 2008, Ex. I, at Bates Stamp MP01311-MP01312. Ultimately, plaintiff has offered nothing more than her speculative belief that she was more qualified for the posts and this simply does not suffice to carry plaintiff's burden under any of the anti-discrimination laws. <u>See</u> <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 469 (2d Cir. 1995)("[A]

party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.").

Third, plaintiff's suggestion that she was denied the posts by Warden Mulvey on the basis of her gender is belied by the fact that Warden Mulvey, the ultimate decision maker in this case, is a woman.  See Comp., Docket Entry No. 1 ¶ "13."  It is well settled that an inference of discrimination is undermined where the person taking the adverse action is in the same protected class as the plaintiff.  See, e.g., Eder v. City of N.Y., No. 06 Civ. 13013 (RWS), 2009 U.S. Dist. LEXIS 11501, at *8 (S.D.N.Y. Feb. 12, 2009) (finding no inference of discrimination and awarding defendant summary judgment where plaintiff and her "immediate supervisor who assessed [her] performance and determined that it was lacking are members of the same protected class).  Accordingly, plaintiff's attempt to attribute any gender based animus to Warden Mulvey's decision must be rejected.

Finally, it is anticipated that plaintiff will argue that her psych unfit status was not the reason for denying her the posts because: (1) her permanent post assignment, 315-B, also required that the officer assigned to the post be qualified to carry a firearm and; (2) plaintiff was temporarily assigned to the Sallyport post which required her to handle every gun that came into the BXDC facility.  Plaintiff's arguments are of no consequence.

First, the record in this case establishes that the DOC made fitness to carry a firearm a minimum condition of employment for all new DOC recruits in 1996.  See Pereiro Dep., Ex. C at 38; see also Mulvey Dep. II, Ex. C at 5-6; Inesta Dep. Ex. F at 13-14, 20.  Plaintiff was diagnosed as psych unfit in 1997 and remained unfit for 11 years until August 20, 2008.  See Pl. Dep., Ex. A, at 59.  Indeed, it was plaintiff's unique situation of being unfit for an inordinate amount of time that caused HMD to transfer plaintiff into BXDC in 2005 "in accordance with

9

her medical condition." See HMD Return Assignment Memorandum dated May 16, 2005, Ex. I at Bates Stamp MP00753. Plaintiff never made an effort to clear her status until after she was denied the posts in question. See Pl. Dep., Ex. A, at 59. The fact that plaintiff was grandfathered out of a requirement made mandatory to all posts in 1996 simply does not establish that Warden Mulvey's decision was somehow tainted by gender based animus.

Second, nor does the fact that the administration assigned plaintiff to the Sallyport post establish an inference of discrimination. Specifically, plaintiff was assigned to the Sallyport post for a thirty day period in January 2008. See Pl. Dep., Ex. A at 36; 76. Unlike the duties required of the officers assigned to the Key Control and Sanit/Storehouse posts, plaintiff testified that her duties in the Sallyport post involved checking in the guns of all the officers that came into the facility. See id. at 76. Noticeably absent from plaintiff's testimony is any indication that she was ever assigned to a post that took her outside of the facility while carrying a firearm. This absence is critical as firearms qualification became most relevant when the officer's responsibilities called for travel outside of his or her home command. Accordingly, any attempt by the plaintiff to undermine Warden Mulvey's legitimate non-discriminatory reasons for denying her the posts must be rejected and plaintiff's gender discrimination claim dismissed.

**E.    No Pretext**

Defendants have articulated legitimate, non-discriminatory reasons for their actions and the burden is on plaintiff to show "pretext." See James, 233 F.3d at 154. While plaintiff may subjectively consider that she was qualified for the posts, it cannot be disputed that the record evidence proves otherwise. Thornley, 104 F.3d at 29 (An employer who is sued on allegations of discrimination is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury.)(citations omitted). All that plaintiff can offer in response to defendants' legitimate business reasons are self-serving, conclusory allegations

and her subjective evaluation of her qualifications and this simply cannot carry the day. Accordingly, plaintiff's discrimination claims must be dismissed.

**POINT II**

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS.**

Plaintiff alleges that after filing a series of complaints challenging various decisions made by the BXDC administration she "became the victim of repeated retaliatory actions." <u>See</u> Comp., Docket Entry 1, ¶ "24." Much like her allegations of gender discrimination, no triable issue exists concerning plaintiff's retaliation claims because: (1) plaintiff cannot establish a *prima facie* case of retaliation and assuming that she can (2) plaintiff cannot establish that defendants' legitimate non-retaliatory reasons for taking the contested actions are false.

**A.** <u>**Standard.**</u>

Title VII retaliation claims are evaluated under a three-step burden shifting analysis. <u>See</u> <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005). First, plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. <u>See</u> <u>Jute,</u> 420 F.3d at 173. If plaintiff establishes a *prima facie* case, defendants must then articulate a legitimate, non-retaliatory reason for the adverse employment actions. <u>Id.</u> In assessing plaintiff's claims, the critical question is whether plaintiff has proven by a preponderance of the evidence that the defendants intentionally retaliated against the

plaintiff for engaging in protected activity. <u>See</u> <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990). [3]

**B.      No *Prima Facie* Case.**

It is undisputed that from June 2008 through June 2009 plaintiff filed a series of complaints challenging various actions taken by the BXDC administration.  However, many of her complaints did not constitute a "protected activity" within the meaning of Title VII, the NYSHRL or the NYCHRL.  To constitute a "protected activity," plaintiff's complaint must oppose statutorily-prohibited discrimination, or, at the very least, give the employer a reasonable basis for concluding that plaintiff's complaint was directed at that.  <u>See</u> <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998) (finding that plaintiff had failed to establish a *prima facie* case of retaliation where plaintiff's complaint did not allege that she was targeted because of her gender, and  nothing in her complaint could reasonably have led her employer to believe that she was complaining about gender discrimination).

A review of the record reveals that the following complaints filed by the plaintiff constitute "protected activities": (1) June 2008 EEO Complaint challenging the post assignments; (2) March 2, 2009 meeting between plaintiff and Chiefs Walsh and Davis challenging numerous allegedly "adverse" actions; (3) March 5, 2009 EEOC Complaint raising claims of discrimination and retaliation; (4) March 23, 2009 complaint to Chief Walsh challenging allegedly retaliatory "shift reductions"; (5) March 26, 2009 complaint to Chief Walsh concerning the shift reductions; (6) April 24, 2009 complaint to Warden Mulvey concerning an "inequitable" distribution of overtime; and (7) May 6, 2009 complaint to Chief Walsh concerning her a request for a tour change.  <u>See</u> EEO Complaint, dated June 5, 2008, Ex.

---

[3] Claims of retaliation under the NYSHRL and the NYCHRL are analyzed in the same manner as those under Title VII.  <u>See</u> <u>Van Zandt v. KLM</u>, 80 F.3d 708, 714-715 (2d Cir. 1996).

J at Bates Stamp MP01299; Pl. Dep., Ex. B at 123-124; <u>see also</u> Walsh Dep., Ex. H at 10-11, 14, 16, 19-22; EEOC Charge of Discrimination, filed March 5, 2009, Ex. L at Bates Stamp MP00989; Complaint from plaintiff to Patrick Walsh, dated March 23, 2009, Ex. K at Bates Stamp MP00560-MP00561; Complaint from plaintiff to Chief Walsh, dated March 26, 2009, Ex. K at Bates Stamp MP00565-MP0568; Memorandum from plaintiff to Warden Mulvey, dated April 24, 2009, Ex. K at MP00071; Memorandum from plaintiff to Chief Walsh, dated May 6, 2009, Ex. K at Bates Stamp MP00058.

Despite these numerous complaints, plaintiff fails to establish a *prima facie* case of retaliation because: (1) the majority of the alleged retaliatory actions cited by plaintiff were not "materially adverse," and, therefore, cannot give rise to a claim of retaliation; and (2) no causal connection exists between any of her complaints and any adverse employment action.

### (1) <u>No Materially Adverse Action</u>

An employment action is "materially adverse" if it is likely to dissuade "a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006). However, <u>Burlington Northern</u> makes clear that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances" that often take place at work. <u>Id.</u> [4]

---

[4] Under the SHRL, in order to satisfy the burden of demonstrating an adverse action, a plaintiff must show that the action in question affected the "terms, privileges, duration, or conditions of the plaintiff's employment." <u>See Okayama v. Kintetsu World Express</u>, No. 111494/05, 2008 N.Y. Misc. LEXIS 7401, at *15 (Sup. Ct. N.Y. Co. June 12, 2008) (citing <u>Forrest</u>, 3 N.Y.3d at 313). Under the CHRL, on the other hand, a plaintiff need only demonstrate that the challenged action was "reasonably likely to deter a person from engaging in protected activity." <u>See id.</u> (quoting N.Y.C. Admin. Code § 8-107(7)(v)) (internal quotation marks omitted). Thus, the scope of "adverse" actions under Title VII is narrower than that of the CHRL. The SHRL's scope, on the other hand, is narrower than either Title VII or the CHRL and encompasses only those actions that actually affect the terms and conditions of a plaintiff's employment. <u>See</u>, <u>e.g.</u>, <u>Brightman v. Prison Health Servs., Inc.</u>, 62 A.D.3d 472 (1st Dep't 2009).

In this case, plaintiff alleges that the following actions were taken in retaliation for her numerous complaints: (1) September 30, 2008: Captain Ferebee relocates plaintiff's post to a lower floor in the Criminal Court building; (2) October 2, 2008: ADW Brantley and Captain Ferebee change plaintiff's tour from 7:30 A.M.-3 P.M. to 8:45 A.M. - 5:15 P.M; (3) November 2008-April 2009: defendants allegedly deny plaintiff overtime; (4) December 29, 2008: Warden Mulvey denies plaintiff's request to switch her vacation week; (5) February 11, 2009: ADW Brantley issues plaintiff a parking ticket for illegally parking in a reserved lot; (6) February 20, 2009- March 24, 2009: ADW Brantley and Captain Ferebee shift reduce plaintiff's post on 4 occasions; and (7) August 2009: Warden Mulvey denies plaintiff's request to purchase a personal firearm. <u>See</u> Pl. Dep., Ex. A at 90; <u>see</u> <u>also</u> Pl. Dep., Ex. B at 91-92; Brantley Dep. II, Ex. F at 95-96; Memorandum from plaintiff to Warden Mulvey, dated November 21, 2008, Ex. J at Bates Stamp MP00698; Memorandum from plaintiff to Warden Mulvey, dated December 29, 2008, Ex. J at Bates Stamp MP01366; Memorandum from ADW Brantley to Warden Mulvey, dated March 6, 2009, Ex. L at MP00702-MP00703; Shift Reduction Report, Ex. J at MP00555-MP0559; Determination of Personal Handgun Request, Ex. K at Bates Stamp MP00615.

As an initial matter, items (1), (3), (6) are not materially adverse actions because they were not particular to the plaintiff but were shared by other correction officers at BXDC. <u>See</u> <u>Lundy v. Town of Brighton</u>, 2010 U.S. Dist. LEXIS 84670 (W.D.N.Y. Aug. 18, 2010)(employment decision that impacts other employees' experience does not constitute actionable retaliation.). With respect to item (1), plaintiff was not the only officer impacted by the change as Captain Ferebee assigned another officer to work with the plaintiff in the new post location. Ferebee Dep., Ex. F at 57. With respect to item (3), plaintiff was not the only officer denied overtime in the period between November 2008 and April 2009. <u>See</u> Moran Dep., Ex. G

at 31-33; Mulvey Dep. II, Ex. D at 15-17.  Specifically, the record establishes that during this period the personnel division incorrectly organized the overtime volunteer list by alphabetical order causing many officers to lose overtime that they would have otherwise earned.  See Moran Dep., Ex. H at 31-33.

With respect to item (6), the evidence shows that, as per an agreement between the DOC and plaintiff's union, the four posts that remained in the Criminal Court building, including plaintiff's post, were all shift reduced to minimize overtime.  See Shift Reduction Report, Ex. J at MP00555-MP0559; see also Mulvey Dep. II, Ex. D at 62-64; Moran Dep., Ex. G at 59.  Accordingly, any attempt to infer retaliatory animus from these actions must be rejected.

Similarly, items (4) and (5) are not adverse because they are precisely the kind of "petty slights or minor annoyances" that the Supreme Court in Burlington Northern determined were not actionable under Title VII's anti-retaliation provision.  See Burlington Northern, 548 U.S. at 68 see also Nugent v. St. Luke's/Roosevelt Hosp. Ctr., No. 05 CV 5109, 2007 U.S. Dist. LEXIS 28274, at *28-33 (S.D.N.Y. April 18, 2007)(Francis, U.S.M.J.)("(1) subjecting [plaintiff] to 'nasty looks' and 'angry [] silences' … ; (2) criticizing her paperwork more heavily and singling her out for criticism when she was late to meetings … ; (3) permitting other staff members to mock her and shun her … ; [and] (4) failing to provide her with written evaluations…" held not to be materially adverse employment actions);  Scott v. Cellco Pshp., No. 98 CV 7245, 2007 U.S. Dist. LEXIS 29063, at *5 (S.D.N.Y. April 3, 2007) (excessive scrutiny of plaintiff "does not constitute adverse employment action[] as now defined in Burlington.");  Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006)("…insufficient training;…requests for documentation before granting vacation;…excessive scrutiny and review" not materially adverse employment actions.).

Finally, as to item (7), Warden Mulvey's decision to deny plaintiff's request to buy a personal firearm is not materially adverse because the decision did not "limit the development of plaintiff's career." See Terry v. Ashcroft, 336 F.3d 128, 143 (2d Cir. 2003).

None of the alleged retaliatory actions are materially adverse because none of them would have dissuaded a reasonable worker from making or supporting a discrimination charge. Indeed, plaintiff's claims are belied by the simple fact that none of the allegedly adverse actions actually dissuaded her from complaining. See Santiago, 2009 U.S. Dist LEXIS 30371 at 43 (In assessing whether an adverse employment action exists, a "highly pertinent fact" to consider is whether the actions actually dissuaded the plaintiff from pursuing her claims). As such, defendants are entitled to summary judgment on plaintiff's retaliation claims.

## C.    No Causation: Legitimate Non-Retaliatory Reasons.

Assuming plaintiff can establish that she suffered an adverse employment action, her claims still must be dismissed because she has failed to offer any evidence establishing a causal connection between her protected activities and the adverse actions. Nor can plaintiff establish that defendants' legitimate non-retaliatory reasons for their decisions are false.

### (1) Post Location.

First, there is no causal connection between plaintiff's June 2008 EEO complaint and Captain Ferebee's September 2008 decision to change plaintiff's post location. See, Hollander v. Am. Cyanimid Co., 895 F.2d 80, 84-86 (2d Cir. 1990) (three and one-half period between complaint and alleged retaliatory act was insufficient to establish causal nexus). Nor can plaintiff establish that defendants' legitimate non-retaliatory reason for changing the location of post 315-B is false. The evidence establishes that, as part of the ongoing transition into the BHOJ, plaintiff's post was slated to be closed down because the holding pens previously assigned to the post were going to be turned over to the NYPD. See Shift Reduction Report, Ex.

J at MP00555-MP0559; <u>see</u> <u>also</u> Davis Dep., Ex. G at 70; Pl. Dep. Ex. A at 90; Pl. Dep., Ex. B at 91-92.

The transition happened over time and as a result, between September 2008 and March 2009, the NYPD and the DOC shared the 315-B holding pens. <u>See</u> Report from Assistant Warden Ronnie Purvis to Warden Mulvey, dated April 2, 2010, Ex. J at MP00557; <u>see</u> <u>also</u> Davis Dep., Ex. G at 70. On September 30, 2008, Captain Ferebee changed the location of post 315-B to a lower floor in the Criminal Court building to facilitate the pending NYPD takeover. <u>See</u> Pl. Dep., Ex. A at 90; <u>see</u> <u>also</u> Pl. Dep., Ex. B at 91-92. That day, plaintiff spoke with Captain Ferebee and conveyed a security concern about the move. <u>Id.</u> Specifically, plaintiff claimed that she felt unsafe being alone in the new location. <u>Id.</u> Plaintiff admits that Captain Ferebee accommodated her safety concerns by placing another officer on the post. <u>Id.</u>; <u>see</u> <u>also</u> Ferebee Dep., Ex. F at 57. Accordingly, no retaliatory animus can be inferred from the post's location change.

### (2) <u>Tour Change, Overtime Claims and Shift Reductions</u>

Plaintiff alleges that the following actions were taken in retaliation for her pursuing her claims against the DOC: (1) on October 2008, plaintiff's tour was changed; (2) from November 2008 through April 2009, plaintiff was "denied" overtime; and (3) between February 2008 through March 2008, plaintiff's post was shift reduced on four occasions. However, all claims based on these actions must be dismissed because the evidence establishes that they occurred as part of the ongoing transition into the new BHOJ. Specifically, these actions were taken to minimize the amount of overtime expended after BHOJ opened.

First, plaintiff cannot establish a causal connection between ADW Brantley's decision to change plaintiff's tour with any of the complaints that she filed. Specifically, plaintiff's tour was changed in October 2008, more than four months after plaintiff filed an

internal EEO complaint. This lapse undermines any inference of retaliation. See Hollander, 895 F.2d at 84-86. Furthermore, the record establishes that ADW Brantley changed plaintiff's tour to stagger the morning shifts in the Criminal Court building in an attempt to minimize overtime on the afternoon and night shifts. See Brantley Dep. II., Ex. F at 95-96; see Davis Dep., Ex. G at 79. Finally, any retaliation claims asserted against Captain Ferebee for enforcing the tour change must be dismissed because plaintiff testified that she did not believe that Ferebee retaliated against her for filing the EEO complaint. See Plaintiff Dep., Ex. A at 92.

Second, equally unavailing is plaintiff's claim that the denial of overtime for her between November 2008 and April 2009 was retaliatory. As discussed in Point II (B)(1), all BXDC officers were effected by: (a) the administration's effort to reduce overtime; and (2) the incorrect organization of the overtime stick list. Moreover, any inference of retaliation is belied by the fact that the overtime given to the plaintiff increased in 2009. For example, plaintiff earned a total of 17 hours of overtime in 2007. See BXDC 2007 Overtime Report, Ex. I at MP00986. In contrast, plaintiff earned 216 hours in the three-month period from September through December 2009. See BXDC 2009 Overtime Report, Ex. L at Bates Stamp MP0102.

Finally, any claims based on the four shift reductions must be dismissed. As an initial matter, plaintiff cannot establish a causal connection between her complaints and the decision to shift reduce the posts. Specifically, Captain Ferebee shift reduced plaintiff's post for the first time on February 20, 2009, seven months after she filed her EEO complaint and almost two weeks before she filed her EEOC complaint and met with Chiefs Walsh and Davis in March 2008. See generally Shift Reduction Report, Ex. J at MP0555-MP0559. Stated differently, plaintiff cannot establish a causal connection because the period between her EEO complaint and the shift reductions are too attenuated. See, Hollander, 895 F.2d at 84-86. Nor can plaintiff

establish a causal connection between the shift reductions and any of the complaints that she filed after March 2008 because the shift reductions occurred before she lodged these complaints. See, <u>Slattery v Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001)(To be actionable, the protected activity must precede the actions which plaintiff claims were retaliatory).

Assuming plaintiff could establish a causal connection between any of her complaints and the shift reductions, her claims still must be dismissed because she cannot establish that defendants' reasons for shift reducing her posts are false. The record shows that on February 11, 2009 plaintiff's union and the DOC met to discuss the future of the Criminal Court building posts. They agreed that these posts, including plaintiff's post, would be shift reduced. After that meeting, the administration shift reduced post 315-B when (1) the NYPD took over the holding pens or (2) DOC was short staffed due to officers calling out sick. See Shift Reduction Report, Ex. J at MP00555-MP0559; Moran Dep., Ex. G at 59; Mulvey Dep. II, Ex. D at 62-63; Ferebee Dep., Ex. F at 64-65; Brantley Dep. II, Ex. E at 89-90; Brantley Dep. II, F at 94-96.

### (3) <u>Plaintiff's Firearm Request.</u>

Plaintiff allegation that Warden Mulvey denied her request to purchase a personal firearm in August 2009 in retaliation for all of the complaints that she filed must be dismissed as they fail to take into account plaintiff's troubling psychological history.

Specifically, from 1997 through August 20, 2008, the DOC deemed plaintiff psychologically unfit to carry or possess a firearm. See Pl. Dep., Ex. A, at 59. Plaintiff was deemed psych unfit for an eleven year period as a result of: (a) suffering from depression; (b) being diagnosed with bi-polar disorder; and (c) attempting to commit suicide during her tenure with the DOC. <u>See id.</u> at 55; <u>see also</u> Theo Dep., Ex. H at 7; 14-15.

In May 2009, Warden Mulvey received an anonymous letter from the BXDC staff titled "Member of Service in Distress." <u>See</u> Letter, dated May 15, 2009, Ex. K at Bates Stamp

MP00635.  The letter stated: "After the sad news that one of our officers committed suicide our command has not [sic] been heart broken and distressed of such a tragic thing.  We regret to inform you that there has been another officer at our command who has shown signs of hurting herself or others….[Plaintiff] has been rambling on saying she hates this department and if she has to hurt someone she will.  She was also heard saying 'Now that I have my gun I'll get them before they get me.' . . .We are afraid for our well being and that of hers."  See id.

Warden Mulvey consulted with Chief Davis about the letter and was ordered to send the plaintiff to HMD for a psychiatric evaluation.  See Davis Dep., Ex. H at 83; see also Mulvey Dep. II., Ex. D at 82-83.   On or about May 29, 2009, Dr. Theo conducted a psychiatric evaluation and found plaintiff psychologically unfit.  Dr. Theo testified that he found her unfit as a precaution based on her serious psychological history.  See Theo Dep., Ex. H at 10-11; 14-15.  Nevertheless, Dr. Theo advised plaintiff to seek a second opinion and return to HMD. Id.

On or about July 13, 2009, plaintiff was re-evaluated by HMD and was found psychologically fit to carry and posses a firearm.  See Memorandum dated July 13, 2009, Ex. K at MP00643.   However, plaintiff was notified that: "A Psychological or medical evaluation resulting in a determination that an employee is "Fit" to possess/carry a firearm does not constitute an immediate mandate for the return of such firearm to the employee.  **The ultimate authority for the return of an employee's firearm remains with the employee's Commanding Officer. . . .** " See id. (emphasis added).

On or about August 2009, Warden Mulvey denied plaintiff's request to purchase a personal firearm.  See Determination of Personal Handgun Request, Ex. K at Bates Stamp MP00615.   Warden Mulvey testified that she denied her request due to plaintiff's long psychiatric record.  See id.; see also Mulvey Dep. II, Ex. D at 88; Theo Dep., Ex. H at 7; 14-15.

Plaintiff's retaliation claims must be dismissed because plaintiff has not only failed to establish a *prima* facie case of retaliation but has also failed to point to any evidence that permits the inference that defendants' reasons for taking the various acts in this case are false.  See Barney v. Consol. Edison Co., 2010 U.S. App. LEXIS 18946 (2d Cir. Sept. 9, 2010).

A review of the record establishes that during the period plaintiff complained about discrimination and retaliation, BXDC undertook the extraordinary task of opening a new facility.  This task called for a massive reorganization and consolidation of various court parts and DOC posts.  In opening the facility, the BXDC administration was faced with: (1) a shortage of staff; (2) an increase in officers calling out sick; (3) many officers' reluctance to help prepare the command for the move; (4) increased tensions between the DOC, the NYPD and the New York State Court Officers' union; and (5) DOC directives to reduce overtime.  During the same period, plaintiff began experiencing the impact of all the administrative decisions stemming from the transition. See Dep., Exhibit B at 111; see also Mulvey Dep. II, Exhibit D, at 21, 62-64; see also Brantley Dep. II, Exhibit E at 15; Memorandum from Jacqueline Brantley to Warden Mulvey, Exhibit I at MP00715; Davis Dep., Exhibit G. at 53.

However, any alleged retaliation must be assessed in accordance with the following objective realities that pertain to the plaintiff: (1) from 2007 through 2009 plaintiff's workload decreased.  Specifically, before January 2008, plaintiff was responsible for the oversight of 30-100 inmates per day.  After January 2008, plaintiff was responsible for the oversight 5-10 per day; (2) from 2008-2009, defendants granted plaintiff four vacation requests; (3) from January 2008 through March 2008, plaintiff was awarded two hardship requests by Warden Mulvey; and (4) in 2009, defendants increased plaintiff's overtime hours.  See Pl. Dep., Ex. A, at 21, 32, 38; see also Ferebee Dep., Ex. F at 33, 54; Brantley Dep. I, Ex. E at 36-37, 49;

Brantley Dep. II, Ex. E at 15, 94-96; Mulvey Dep. II, Ex. D at 49; Davis Dep., Ex. G, at 53;

Memorandum from Plaintiff to Warden Mulvey (through channels), dated January 9, 2008, Ex. I

at Bates Stamp MP01489; Memorandum from ADW Brantley to Mulvey, dated January 10,

2008, Ex. I at Bates Stamp MP01478; Memorandum from Plaintiff to Warden Mulvey (through

channels), dated February 11, 2008, Ex. I at Bates Stamp MP01517.

Viewing the facts in the light most favorable to plaintiff, the court will be unable

to find any triable issues of material fact concerning either plaintiff's discrimination or

retaliation claims. Therefore, summary judgment should be granted in favor of the defendants.[5]

## POINT III

### PLAINTIFF'S § 1983 CLAIMS MUST BE DISMISSED.

**A.    Plaintiff's 1983 Claims Must Be Dismissed for Failure to <u>Establish Monell.</u>**

Plaintiff's § 1983 claims  against the City must be dismissed because she has

failed to produce any evidence that establishes that the alleged discriminatory actions were the

result of an official policy or custom.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694

(1978).  To hold the City liable under § 1983, plaintiff must establish that the City itself deprived

---

[5] Furthermore, any attempt by plaintiff to assert a claim that the defendants "have engaged in a pattern and practice of retaliation", must be rejected. <u>See</u> Comp., Docket Entry 1, ¶ 46.  <u>United States v. City of New York</u>, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009) (holding that an individual cannot maintain a private, non-class, pattern-or-practice claim); <u>see</u> <u>also Milani v. IBM Corp. Inc.</u>, 322 F. Supp. 2d 434, 452-52 (S.D.N.Y. 2004)(Holding that "it is by no means clear that a private plaintiff can even bring a 'pattern-or-practice' claim in a non-class action complaint."; <u>see</u> <u>also</u> <u>Lowery v. Circuit City Stores, Inc.</u>, 158 F.3d 742, 759 (4th Cir. 1998)("individuals do not have a private, non class cause of action for pattern or practice discrimination under § 1981 or Title VII), <u>vac. on other grounds</u>, 577 U.S. 1031, 119 S.Ct. 2388 (1999); <u>Celestine v. Petroleos de Venezuela</u>, 266 F.3d 343, 356 (5th Cir. 2001)("the pattern and practice method of proof is almost exclusively used in class actions, with individual racial discrimination plaintiffs confined to the <u>McDonnell Douglas</u> framework")(citations omitted); <u>Barbrocky v. Jewel Food Co.</u> 773 F.2d 857, 866-67 (7th Cir. 1985)("Plaintiffs' use of 'pattern-or-practice' language also seems to be misplaced, since such suits, by their nature, involve claims of class-wide discrimination ...).

plaintiff of a constitutional right through a "policy," "practice," or "custom." <u>Monell</u>, 436 U.S. at 690-95. Proof of a single incident of unconstitutional activity is insufficient to demonstrate the existence of a custom or policy. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 821 (1985).

In this case, plaintiff has failed to produce any evidence tending to support a claim that a particular policy, practice or custom of the City or the DOC discriminated or retaliated against persons based on their gender. Indeed, plaintiff's claims must fail to the extent that the complaint is composed solely of allegations concerning plaintiff's specific case and is devoid of any facts that could establish a valid <u>Monell</u> claim. Accordingly, plaintiff's § 1983 discrimination and retaliation claims must be dismissed.

**B.**     <u>**No Individual Liability – Qualified Immunity.**</u> <u>**[6]**</u>

Qualified immunity protects government officials from civil suit when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The protections of qualified immunity are exceedingly broad. As the Supreme Court has put it, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Until the Supreme Court's decision in <u>Pearson v. Callahan</u>, 129 S. Ct. 808 (2009), it was generally agreed that a proper qualified immunity analysis entailed a three step inquiry, known as the <u>Saucier</u> protocol, which had to be conducted in a particular order. <u>Harhay v. Town of Ellington Bd. of Educ.</u>, 323 F.3d 206, 211 (2d Cir. 2003). First, a court was expected to decide whether, based upon the facts alleged, the plaintiff had facially established a

---

[6] Similarly, It is well settled that there is no individual liability under Title VII. <u>See</u> <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds*. Therefore, all Title VII claims asserted against the individual defendants must be dismissed in their entirety.

constitutional violation. Id.; Gilles v. Repicky, 511 F.3d 239, 243-44 (2d Cir. 2007). If the answer to this question was in the affirmative, then the court had to decide whether the right in issue was clearly established at the time of the alleged violation. Id. (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001). Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right which was violated, then the court had to consider whether it was nonetheless objectively reasonable for the defendant to believe that his action did not abridge that established right. Harhay, 323 F.3d at 211. In Pearson, however, the Supreme Court made clear that the lower courts are not wedded to consideration of the issues as sequenced above; instead, they have the discretion to decide which of the "prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." 129 S. Ct. at 818.

In order to determine whether the individual defendants in this case are entitled to qualified immunity, the Court should first examine whether based upon the facts alleged, the plaintiff had facially established a constitutional violation. As set forth in Points I and II above, defendants have established that they did not violate any of the plaintiff's constitutional rights. The Court, therefore, does not need to proceed any further as the individual defendants are thus entitled to qualified immunity as a matter of law. Demoret v. Zegarelli, 451 F.3d 140, 148 (2d Cir. 2006).

## <u>CONCLUSION</u>

**WHEREFORE**, defendants respectfully request that their summary judgment motion be granted, that the Complaint be dismissed, that the relief requested by plaintiff be denied, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
      October 12, 2010

              **MICHAEL A. CARDOZO**
              Corporation Counsel of the
               City of New York
              Attorney of for Defendants
              100 Church Street, Room 2-184
              New York, New York 10007-2601
              (212) 227-3153
              lmartine@law.nyc.gov

      By:  **ECF**  **/s/**
              Larry R. Martinez
              Assistant Corporation Counsel

**KATHLEEN M. COMFREY,**
**LARRY R. MARTINEZ,**
   *Of Counsel.*